**BREI LAW FIRM**
4574 N. First Ave., Suite 150
Tucson, AZ 85718
Phone: 520-297-4411
Fax: 520-297-8811
E-mail: jeff@breilaw.com
Jeffrey T. Brei
PCC No. 65438; AZ State Bar: 019404
E-mail: justin@breilaw.com
Justin D. Castillo
PCC No. 65892; AZ State Bar: 024086
*Attorneys for Plaintiff*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Williams & Lake, LLC, | No. 4:17-cv-00117-CKJ |
| Plaintiff, | |
| v. | **PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON COUNT IV OF THE COMPLAINT** |
| Genesis Systems, LLC, an Arizona limited liability company; George Jameson; and James Randy Burchett, | |
| Defendants. | **Jury Trial Demanded** |

TABLE OF CONTENTS

I.      *MOTION* ................................................................................................ **1**

II.     *SUMMARY OF ARGUMENT* .............................................................. **1**

III.    *LEGAL STANDARD FOR PARTIAL SUMMARY JUDGMENT* ................................. **3**

IV.     *ARGUMENT* ......................................................................................... **5**

      *A.*    *W&L Built a Business Manufacturing and Selling "SAFETY FIRST$^{TM}$" Brake Light Modules* ................................. **5**

      *B.*    *W&L's Business Model Comprised Protectable Trade Secrets and Confidential Information* ...................................... **6**

      *C.*    *Defendant Jameson Worked For W&L as a "Manufacturer's Representative" Selling W&L's "SAFETY FIRST$^{TM}$" Brake Light Modules* ................................................................ **7**

            *1.*    *Defendant Jameson Worked at W&L Headquarters* ...................... **7**

            *2.*    *Defendant Jameson Explicitly Admitted in Connection with a Bank Loan that He Worked for W&L as a "Manufacturer's Representative" Selling W&L's "SAFETY FIRST$^{TM}$ Brake Light Modules* ................................ **8**

            *3.*    *Defendant Jameson Sent Dozens of E-mails to W&L Customers as a "Manufacturer's Representative" of W&L Selling W&L's "SAFETY FIRST$^{TM}$" Brake Light Modules* ................................................................ **9**

            *4.*    *Defendant Jameson Regularly Met With W&L Customers as a "Manufacturer's Representative" of W&L Selling W&L's "SAFETY FIRST$^{TM}$" Brake Light Modules* .................... **11**

            *5.*    *Defendant Jameson Continued Following-up With W&L Customers and Made Marketing Suggestions to W&L's Management* ............................................................ **12**

i

6.   *Mr. Jameson Actively Advocated On Behalf of W&L that the SAFETY FIRST$^{TM}$ Brake Light Module Was Legal* ............. 12

7.   *W&L Paid Defendant Jameson For Selling W&L's "SAFETY FIRST$^{TM}$" Brake Light Modules* ................................. 13

8.   *Defendant Jameson Admitted in His Marketing Video For Defendant Genesis That He Had "Represented" W&L* ........................................................ 14

D.   *Defendant Jameson Falsely Stated Under Oath That He Never Held Himself Out as a Manufacturer's Representative of W&L* ........................................ 14

E.   *Under Arizona Law, Defendant Jameson Was An Agent of W&L and Owed a Fiduciary Duty and Duty of Loyalty to W&L* ................................................. 15

V.   *RELIEF REQUESTED* ............................................................ 20

ii

# TABLE OF AUTHORITIES

**CASES**

*ACLU v. City of Las Vegas,*
    333 F.3d 1092 (9th Cir. 2003) ....................................................................4

*Anderson v. Liberty Lobby, Inc.,*
    477 U.S. 242 (1986)..................................................................................4

*Ariz. State Tax Comm'n. v. Parsons-Jurden Corp.,*
    449 P.2d 626 (Ariz. Ct. App. 1969) ........................................................16

*Baker v. Leight,*
    91 Ariz. 112, 370 P.2d 268 (1962) ..........................................................17

*Brinson v. Linda Rose Joint Venture,*
    53 F.3d 1044 (9th Cir. 1995) ....................................................................4

*Celotex Corp. v. Catrett,*
    477 U.S. 317 (1986)..................................................................................4

*Cote v. A. J. Bayless Mkts.,*
    128 Ariz. 438, 626 P.2d 602 (Ct. App. 1981)....................................16, 17

*Dutch Inns of America, Inc. v. Horizon Corporation,*
    18 Ariz. App. 116, 500 P.2d 901 (1972)..................................................17

*Enter. Leasing Co.v. Ehmke,*
    197 Ariz. 144 (Ct. App. 1999) ..................................................................6

*E*Trade Fin. Corp. v. Eaton,*
    No. CV-17-02471-PHX-JJT, 2018 WL 1933313 (D. Ariz. Apr. 24, 2018)..............20

*Flippen v. Ashland Arms, LLC,*
    No. CV08-630-PHX-NVW, 2009 WL 1390839 (D. Ariz. May 15, 2009) ...............15

*Food Servs. of Am., Inc. v. Carrington,*
    No. CV-12-00175-PHX-GMS, 2013 U.S. Dist. LEXIS 120194
    (D. Ariz. Aug. 23, 2013).............................................................................7

*Goodman v. Physical Res. Eng'g, Inc.,*
   229 Ariz. 25, 270 P.3d 852 (Ct. App. 2011)..........................................16, 17

*HTS, Inc. v. Boley,*
   954 F. Supp. 2d 927 (D. Ariz. 2013) ............................................................7

*Indep. Gin Co. v. Parker,*
   19 Ariz. App. 413, 508 P.2d 78 (1973).......................................................16

*Joshua David Mellberg LLC v. Will,*
   96 F. Supp. 3d 953 (D. Ariz. 2015) ...........................................................6,7

*Lowe's HIW, Inc. v. Thomas James Civil Design Grp.,*
   No. CV 09-02481-PHX-MHM, 2010 U.S. Dist. LEXIS 68006
   (D. Ariz. July 7, 2010) ...............................................................................16

*Marquess v. Spaner,*
   15 Ariz. App. 342, 488 P.2d 698 (1971).....................................................17

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,*
   475 U.S. 574 (1986).....................................................................................4

*McCallister Co. v. Kastella,*
   170 Ariz. 455, 825 P.2d 980 (App. 1992)...................................................19

*Ochoa v. J.B. Martin & Sons Farms,*
   287 F.3d 1182 (9th Cir. 2002) ..................................................................16

*Ruesga v. Kindred Nursing Ctrs. W., L.L.C.,*
   215 Ariz. 589, 161 P.2d 1253 (Ct. App. 2007)................................15, 16, 17

*Schenks v. Earnhardt Ford Sales Co.,*
   454 P.2d 873 (Ariz. Ct. App. 1969)............................................................17

*State v. Tubbs,*
   173 Ariz. 127, 840 P.2d 303 (Ct. App. 1992).............................................16

*Taser Int'l, Inc. v. Ward,*
   224 Ariz. 389, 231 P.3d 921 (2010) ................................................18, 19, 20

iv

*Thomas v. Newcomb,*

26 Ariz. 47, 221 P. 226 (1923) ................................................................. 19

*Universal Engraving, Inc. v. Metal Magic, Inc.,*

No. CV-08-1944-PHX-GMS, 2010 U.S. Dist. LEXIS 125702

(D. Ariz. Nov. 29, 2010) ............................................................................. 7

*United States v. Kuzmenko,*

NO. 2:11-CR-0210 JAM, 2014 WL 7140640 (E.D. Cal. Dec. 12, 2014) ................... 8

*Urantia Found v. Maaherra*,

895 F. Supp. 1335 (D. Ariz. (1995) ........................................................... 3

*Villiarimo v. Aloha Island Air, Inc.,*

281 F.3d 1054 (9th Cir. 2002) .................................................................. 4

*Vivian Arnold Realty Co. v. McCormick,*

19 Ariz. App. 289, 506 P.2d 1074 (1973)................................................ 17

*Warren v. City of Carlsbad,*

58 F.3d 439(9th Cir. 1995) ....................................................................... 3

*Warren v. Mangels Realty,*

23 Ariz. App. 318, 533 P.2d 78 (1975)..................................................... 18

**STATUTES**

Fed. R. Civ. P. 56 ...........................................................................................1,3

Fed. R. Civ. P. 56(a) .........................................................................................3

Fed. R. Civ. P. 56(e) .........................................................................................4

LRCIV 56.1 ...................................................................................................1, 5

18 U.S.C. § 1343 .............................................................................................. 8

18 U.S.C. § 1344 .............................................................................................. 8

18 U.S.C. § 1512(b)(3) ..................................................................................... 8

18 U.S.C. § 1956(a)(1)(B)(i) ............................................................................ 8

18 U.S.C. § 1956(a)(1)(B)(ii) ........................................................................... 8

18 U.S.C. § 1957 .................................................................................................. 8

**OTHER AUTHORITIES**

3 C.J.S. Agency § 547 ....................................................................................... 17

Restatement (2d) of Agency § 1 (2nd 2010) ................................................... 15

Restatement (2d) of Agency § 26 (2nd 2010) ................................................. 15

Restatement (3d) of Agency § 1.01 (3rd 2006) .............................................. 16

Restatement (3d) of Agency § 1.03 (3rd 2006) .............................................. 16

Restatement (3d) of Agency § 8.04 ................................................................. 20

Restatement (3d) of Agency § 8.05 ................................................................. 20

## I.     MOTION

Plaintiff Williams & Lake, LLC ("W&L"), by and through its counsel, and pursuant to *Fed. R. Civ. P.* 56 and Local Rule 56.1, hereby files its Motion for Partial Summary Judgment on Count IV of the Complaint requesting a ruling that Defendant George Jameson ("Jameson") was employed by W&L as an agent, and in his capacity as an agent, Mr. Jameson owed W&L a fiduciary duty and duty of loyalty not to use W&L's Trade Secrets or Confidential Information for the competitive advantage of the Defendants and to the detriment of W&L.

## II.     SUMMARY OF ARGUMENT

W&L has pled that Mr. Jameson owed a Duty of Loyalty and Fiduciary Duty to W&L not to use W&L's Trade Secrets and Confidential Information for the Defendants' competitive advantage and to the detriment of W&L, and that Mr. Jameson breached these duties (*see* Complaint; Count IV, ¶121 through ¶137).[1] The predicate fact for this claim is that Mr. Jameson worked for W&L. The record clearly establishes that Mr. Jameson did work for W&L, selling W&L brake light modules as a W&L representative. But Mr. Jameson has flatly denied this threshold fact in his answers to interrogatories, declaring under oath: "*Mr. Jameson was never employed by W&L.*" (*See* Statement of Material Facts Not in Dispute ("SOMF"), Attachment "J"; Jameson's Answer to Interrogatory No. 3, page 9.) Mr. Jameson's alleged subjective belief that he was never employed as an agent for W&L is legally irrelevant in view of the incontrovertible documentary evidence establishing that Mr. Jameson consistently held himself out to the public and potential customers as a "Manufacturer's Representative" for W&L.

---

[1]   For ease of reference, the defined terms in the Second Amended Complaint filed on November 20, 2017 (Dkt. #59) ("Complaint") are incorporated herein by reference.

1

In view of Mr. Jameson's repeated statements of his intention to argue to the jury that he was not employed as an agent of W&L for purposes of selling the W&L brake light modules, W&L seeks summary judgment on this narrow but important issue to limit obfuscation by Mr. Jameson at trial and to establish the factual foundation from which Mr. Jameson's liability as an agent for W&L at trial will be judged.

Starting with their Answer, Defendants have been foreshadowing their intent to rely on denying any employment relationship between Mr. Jameson and W&L. The Complaint at paragraph 20 states that: "In 2013, Mr. Jameson started to work for W&L as a sales representative selling W&L's patented modulating brake light circuit with the secondary lockout feature." In his Answer to this pivotal factual allegation, Mr. Jameson denies that he "was ever employed by W&L." Further, paragraph 122 of the Complaint alleges that: "As an agent of W&L, Mr. Jameson and Mr. Burchett had a duty to act with entire good faith and loyalty in furtherance of the interest of W&L in all matters concerning the scope of their agency." In his Answer, Mr. Jameson denies being an agent of W&L as alleged in paragraph 122 of the Complaint.

As discussed herein, the legal test for determining whether an agency relationship existed does not depend upon the intent of the parties to create it, nor their belief that they have done so. Rather, the dispositive test is whether the principal and agent, by their written or spoken words or other conduct, manifested assent to the establishment of an agency relationship. Further, when the material facts from which an agency relationship may be inferred can lead to only one reasonable conclusion, then the issue may be decided as a matter of law. The indisputable documentary evidence and conduct described below conclusively establishes that the only reasonable inference to be drawn from the facts is that there was an agency relationship between Mr. Jameson and W&L. Once that fact is established, then it follows as a matter of law that as an agent of W&L Mr. Jameson owed a fiduciary duty and a duty of loyalty to W&L. Whether Mr. Jameson breached that duty

will be determined at trial. But the simple threshold question of whether Mr. Jameson was an agent of W&L and owed a fiduciary duty and duty of loyalty to W&L is ripe for summary adjudication.

### III.    LEGAL STANDARD FOR PARTIAL SUMMARY JUDGMENT

A party may move for "partial summary judgment" as to a part of a claim. *Fed. R. Civ. P.* 56. Rule 56 provides in pertinent part that: "A party may move for summary judgment, identifying . . . the part of each claim . . . on which summary judgment is sought." *Fed. R. Civ. P.* 56. The Advisory Committee Notes to the 2010 amendments to Rule 56(a) state that:

> The first sentence is added to make clear at the beginning that summary judgment may be requested not only as to an entire case but also as to a claim, defense, ***or part of a claim*** or defense. The subdivision caption adopts the common phrase "***partial summary judgment***" to describe disposition of less than the whole action, whether or not the order grants all the relief requested by the motion. [Emphasis Added].

In that regard, "[t]he standard applied to a motion for partial summary judgment is identical to the standard applied to adjudicate a case fully by summary judgment." ***Urantia Found. v. Maaherra***, 895 F. Supp. 1335, 1335 (D. Ariz. 1995).

The Court grants summary judgment when the movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In making this determination, the Court views the evidence "in a light most favorable to the non-moving party." ***Warren v. City of Carlsbad***, 58 F.3d 439, 441 (9th Cir. 1995). Where the parties have filed cross-motions for summary judgment, the Court "evaluate[s] each motion independently, 'giving the nonmoving party in each instance the benefit of all reasonable inferences.'" ***Lenz v. Universal Music***

3

*Corp.*, 815 F.3d 1145, 1150 (9th Cir. 2015) (quoting *ACLU v. City of Las Vegas*, 333 F.3d 1092, 1097 (9th Cir. 2003)).

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986). The party opposing summary judgment "may not rest upon the mere allegations or denials of [the party's] pleadings, but ... must set forth specific facts showing that there is a genuine issue for trial." *Fed. R. Civ. P.* 56(e); *see Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986); *Brinson v. Linda Rose Joint Venture*, 53 F.3d 1044, 1049 (9th Cir. 1995). Substantive law determines which facts are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). "A fact issue is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002) (quoting *Anderson*, 477 U.S. at 248).

Partial summary judgment is appropriate and respectfully requested here to confirm that for purposes of Count IV of the Complaint, Mr. Jameson was employed by W&L as an agent, and therefore Mr. Jameson owed a duty of loyalty and fiduciary duty to W&L to not use W&L's Trade Secrets and Confidential Information for the Defendants' own competitive advantage and to the detriment of W&L.

//

//

//

4

# IV.   ARGUMENT

## A.   W&L Built a Business Manufacturing and Selling "SAFETY F1RST™" Brake Light Modules.

In late 2011, W&L began planning to develop, market, and sell a rear-end collision avoidance system for automobiles, which would make brake lights more visible to drivers in following automobiles. W&L launched its new business to design, produce, and market "SAFETY F1RST™" modulating brake light circuits based upon two existing patent(s) that W&L had licensed. W&L developed and had manufactured a unique modulating brake light circuit that connects to the electrical system of an automobile and when the brakes are activated causes the automobile's center high mounted stop lamp ("CHMSL") to initially brighten and dim rapidly a certain number of times and then remain illuminated. This pulsating light provides an enhanced warning system to a trailing driver that the automobile is slowing or stopping. (*See* Affidavit of Bradley Dorsey ("Dorsey Affidavit"), dated June 5, 2018, at ¶4 to ¶5.)

The founders of W&L had no prior experience in this type of business venture. It took significant time, money, and effort to develop a successful business model that brought together all the various aspects of operating this new business, developing customers, and penetrating the marketplace with a unique modulating brake light circuit. W&L acquired and honed this knowledge over time through expensive trial and error. The knowledge, information, relationships, and data embodied in the eventual success of W&L's business model collectively constituted W&L's Trade Secrets or Confidential Information, which provided W&L with a valuable competitive advantage over would-be competitors in this emerging marketplace. (*See* Dorsey Affidavit at ¶6 to ¶7.[2])

---

[2]   Pursuant to Local Rule 56.1, the facts set forth in ¶4 through ¶7 of Mr. Dorsey's affidavit are not undisputed facts relied upon by W&L in support of its motion, but rather are background facts about the action and parties.

**B.     W&L's Business Model Comprised Protectable Trade Secrets and Confidential Information.**

The ultimate issue for trial will be whether the business model that W&L developed over the years for purposes of successfully penetrating the marketplace, which business model Mr. Jameson had access to when he worked for W&L and replicated for purposes of launching Genesis, constituted legally protectable trade secrets and confidential information. Although W&L's business model can theoretically be dissected into components, some of which may be found in the public domain, it is the unique compilation, integration, and effective methods of execution of numerous elements both in the public domain and not in the public domain that collectively constituted W&L's Trade Secrets or Confidential Information and provided W&L with an important competitive advantage over would-be entrants into the marketplace.

It is well settled that the development of this type of successful business model, which integrates information in the public domain and enables a party to gain a competitive advantage in the marketplace, can qualify as a protectable trade secret or confidential information. This Court has previously overruled objections challenging the status of information as trade secrets in reliance upon this rule of law, holding as follows:

> Although matters of general knowledge cannot be appropriated as secret, a trade secret may consist of a combination of elements even though *each* individual component may be a matter of common knowledge. Trade secrets may consist of a compilation of information that is continuously used or has the potential to be used in one's business and that gives one an opportunity to obtain an advantage over competitors who do not know of or use it. Thus, training videos, business plans, customer information, and marketing techniques can be trade secrets.

*Joshua David Mellberg LLC v. Will*, 96 F. Supp. 3d 953, 965 (D. Ariz. 2015) (*Opinion per the Honorable Cindy K. Jorgenson*) citing *Enter. Leasing Co. v. Ehmke*, 197 Ariz.

6

144, 149 (Ct. App. 1999). Time and time again other federal courts in the 9th Circuit have also recognized this principle of law when it comes to evaluating claims involving misappropriation of trade secrets and confidential information.[3]

## C.   Defendant Jameson Worked For W&L as a "Manufacturer's Representative" Selling W&L's "SAFETY F1RST™" Brake Light Modules.

### 1.   *Defendant Jameson Worked at W&L Headquarters.*

W&L operated out of and maintained its business records at its offices at 3911 N. Highway Drive in Tucson. This location also functioned as the offices of another company owned by W&L principal Bradley Dorsey ("Dorsey") called Leader Automotive Group, LLC ("Leader"). Leader operated a car auction business. Mr. Dorsey hired Mr. Jameson to be the General Manager of Leader, and Mr. Jameson held that position, during which time Mr. Jameson worked out of W&L's headquarters at 3911 N. Highway Drive in Tucson. Mr. Jameson worked out of that same location when he worked for W&L as a "Manufacturer's Representative" selling W&L's "SAFETY F1RST™" brake light modules.[4] (*See* Dorsey Affidavit at ¶8 to ¶9.)

---

[3]   *Accord*, **Joshua David Mellberg LLC v. Will**, No. CV-14-02025-TUC-CKJ, 2016 U.S. Dist. LEXIS 32414, at *11 (D. Ariz. Mar. 11, 2016) (*Opinion per the Honorable Cindy K. Jorgenson*) ("[A] trade secret may include a grouping in which the components are in the public domain but there has been accomplished an effective, successful and valuable integration of those public elements such that the owner derives a competitive advantage from it."); **Food Servs. of Am., Inc. v. Carrington**, No. CV-12-00175-PHX-GMS, 2013 U.S. Dist. LEXIS 120194, at *11-12 (D. Ariz. Aug. 23, 2013) ("Although matters of general knowledge cannot be appropriated as secret, a trade secret may consist of a combination of elements even though each individual component may be a matter of common knowledge."); **HTS, Inc. v. Boley**, 954 F. Supp. 2d 927, 944 (D. Ariz. 2013) ("[A] trade secret is not simply information as to single or ephemeral business events. Rather, a trade secret may consist of a compilation of information that is continuously used or has the potential to be used in one's business and that gives one an opportunity to obtain an advantage over competitors who do not know of or use it."); **Universal Engraving, Inc. v. Metal Magic, Inc.**, No. CV-08-1944-PHX-GMS, 2010 U.S. Dist. LEXIS 125702, at *9 (D. Ariz. Nov. 29, 2010) ("Under Arizona law, "matters of general knowledge cannot be appropriated as secret, [however,] a trade secret may consist of a combination of elements even though each individual component may be a matter of common knowledge.")

[4]   In May 2015, W&L acquired a company that sold a competing product under the name "Pulse™", and after that acquisition W&L re-branded its product under the trade name "Pulse, *Powered by* Safety F1rst™".  *See* Dorsey Affidavit at ¶10.

### 2. Defendant Jameson Explicitly Admitted in Connection with a Bank Loan that He Worked for W&L as a "Manufacturer's Representative" Selling W&L's "SAFETY F1RST™" Brake Light Modules.

In 2015 Mr. Jameson had applied for a home loan, and upon review of the loan application the underwriter asked Mr. Jameson to explain why he had submitted expenses on IRS Tax Form 2106 on his 2012 tax return but none in 2013. (SOMF at ¶1.) Tax form 2106 is used by taxpayers seeking to deduct expenses incurred while conducting business.[5] Mr. Jameson responded to the underwriter on January 16, 2015 as follows:

> **I started representing Williams & Lake, DBA Safety F1rst Brake Lights, in 2012. I incurred expenses as a "1099" manufactures** [sic] **representative**. I in effect started my own business using their product. The expenses are no longer non-reimbursed. The company now provides all the written point of sale materials, sample product, business cards, e-mail, website, advertising, and every related expenses to sales. The company provides everything needed since the onset of 2013. I will not have any "2106" expenses in 2014 or going forward. [Emphasis Added]

(SOMF at ¶1; Jameson Depo. Exh. No. 3.)

Mr. Jameson made this candid statement in early 2015 – before the specter of this litigation was looming. The veracity of his pre-litigation admission to a third-party that he started "representing" W&L as a "manufacturer's representative" in 2012 should be given especially great weight, since submitting false information as part of a mortgage application implicates severe criminal penalties.[6] Moreover, Mr. Jameson's e-mail written in early 2015 accurately recounts that starting in 2013 W&L covered all of his expenses while he was employed as a "Manufacturer's Representative" for W&L. *Id.*

---

[5] *See* www.irs.gov/forms-pubs/form-2106-employee-business-expenses (last visited 6/4/2018).

[6] *Accord*, *e.g.*, **United States v. Kuzmenko**, No. 2:11-CR-0210 JAM, 2014 WL 7140640, at *1 (E.D. Cal. Dec. 12, 2014) ("The defendants are charged in a superseding indictment with wire fraud in violation of *18 U.S.C.* § 1343, mail fraud in violation of *18 U.S.C.* § 1344, money laundering in violation of *18 U.S.C.* §§ 1956(a)(1)(B)(i) and (ii), engaging in prohibited monetary transactions in violation of *18 U.S.C.* § 1957, and witness tampering in violation of *18 U.S.C.* § 1512(b)(3) along with a criminal forfeiture allegation. (citation omitted) On its face, the indictment appears to present a garden variety mortgage fraud case ….")

8

3.      ***Defendant Jameson Sent Dozens of E-mails To W&L Customers as a "Manufacturer's Representative" of W&L Selling W&L's "SAFETY F1RST™" Brake Light Modules.***

Starting on February 13, 2013, Mr. Jameson sent marketing e-mails to no less than fifteen (15) potential customers of W&L providing an "overview of [the] Safety First" brake light circuit, which overview Mr. Dorsey had provided to Mr. Jameson for his use in marketing W&L's brake light circuit. (SOMF at ¶2; Jameson Depo. Exh. Nos. 6, 7, 8 and 9.) The e-mails began by stating that: "We have the exclusive on this product." Id; Jameson Depo Exh #6. Five days later, on February 18, 2013, Mr. Jameson sent the same marketing e-mails to no less than twenty (20) more potential customers, concluding the e-mails by stating: "[P]lease give this opportunity your consideration and ***champion it for me*** in your store(s)." [Emphasis Added] (SOMF at ¶2; Jameson Depo Exh. No. 7.) Mr. Jameson sent further marketing e-mails to customers between February 19 and 22, 2013. (SOMF at ¶2; Jameson Depo. Exh. Nos. 8 and 9.)

When Mr. Jameson first started to send these marketing materials in February 2013 during the early days of W&L's business venture, Mr. Jameson would use his Leader e-mail address (*i.e.*, george@leaderpublicauction.com) with the title "General Manager, Leader Public Auction", but would sign the e-mails on behalf of "Randy Burchett & George Jameson". (SOMF at ¶2; Jameson Depo. Exh. Nos. 6 and 7.) Shortly after those initial e-mails in February, on March 13, 2013, Mr. Dorsey forwarded Mr. Jameson his "Safety First contract along with a business card proof" and provided him with a W&L e-mail address. (SOMF at ¶5; Jameson Depo. Exh. No. 23.) The business card attached to the e-mail is reproduced below:[7]

---

[7]   In his sworn answers to interrogatories, Mr. Jameson professed no recollection of receiving the March 13, 2013 e-mail with the attached contract and business card. *See* Answer to Interrogatory No. 4 at pg. 10. However, Mr. Jameson responded to Mr. Dorsey's e-mail on the same day acknowledging receipt and stating that: "Thank . . . got it & will do." SOMF at ¶5; Jameson Depo. Exh. No. 24.

9

www.safebrakelight.com

George Jameson
Manufacturer's Representative
george@safebrakelight.com

Williams & Lake, LLC.
1001 E 17th St Suite 132
Tucson, AZ 85719
Main: (520) 229-0820 / Cell: (520) 481-9796

By April 2013, Mr. Jameson was using his new W&L e-mail address (i.e., george@safebrakelight.com) in connection with his work for W&L, and he started sending marketing e-mails to customers identifying himself and Randy Burchett as "Manufacturer's Representatives" for W&L, bearing the following signature on the numerous e-mails he sent:



**Randy Burchett**
**George Jameson**
Manufacturer Representatives
Williams & Lake LLC
2627 S 4th Ave
Tucson, AZ 85713
520-991-3544 Mobile Randy
520-481-9796 Mobile George

(SOMF at ¶6; Jameson Depo. Exh. Nos. 19; 22; 34; 38; 39; 43; 45; 49; 51; 52; 53; 54; 60.)

//

//

//

//

10

1

2

3

       **4.**     ***Defendant Jameson Regularly Met With W&L Customers as a "Manufacturer's Representative" of W&L Selling W&L's "SAFETY F1RST™" Brake Light Modules.***

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

     When Mr. Jameson would get a positive response to these marketing e-mails he sent on behalf of W&L, he would follow up with the customer by offering to "send a couple of circuits to install on your own vehicle and for demo on some units at the store if you would like." (SOMF at ¶3; Jameson Depo. Exh. #11.) In those marketing e-mails identifying himself and Randy Burchett as "Manufacturer's Representatives" for W&L sent from his W&L e-mail address, Mr. Jameson would sometimes end the e-mails by telling the customers that: "I can bring you point of sale materials and samples and would be willing to do some sample installations for you to demonstrate. Just let me know." (SOMF at ¶7; Jameson Depo. Exh. No. 34; Jameson Depo. Exh. No. 54 ("We could come back up to your store and help your staff with an initial set up.")); Jameson Depo. Exh. No 42 ("I will be at the LHM Dodge store Friday at 8:00 a.m. to speak to the sales staff. I would like to do some courtesy installations on sales people vehicles and could use some help.") Mr. Jameson further stated to the customer that: "I would talk to your salespeople and help them with some word tracks and demonstration techniques to help ensure your success." *Id*; Jameson Tr. 134, line 4 to line 10; Jameson Depo. Exh. No. 54. In those e-mails, Mr. Jameson would refer to W&L as "our company and product". *Id*; Jameson Depo. Exh. No. 19. Mr. Jameson would conclude many of those e-mails with the statement: "Please call me!" *Id*; Jameson Depo. Exh. No. 45.

22

23

24

25

26

     Mr. Jameson would also meet with W&L customers as a "Manufacturer's Representative" of W&L Selling W&L's "SAFETY F1RST™" brake light modules. For example, Mr. Jameson secured Larry H. Miller Dodge Ram Tucson as a customer for W&L and worked that customer on behalf of W&L. (SOMF at ¶6 and ¶7; Jameson Depo. Exh. Nos. 42; 44; 50; 59.) Mr. Jameson would meet in person with the customers for

27

28

purposes of selling the W&L product. (SOMF at ¶7; Jameson Depo. Exh. No. 47 ("Thank you for meeting with us yesterday."); Jameson Depo. Exh. No. 48; 59 ("I am dressed for a meeting today with LM Dodge."))

### 5. *Defendant Jameson Continued Following-up With W&L Customers and Made Marketing Suggestions to W&L's Management.*

After a year of working for W&L in this manner, Mr. Jameson followed up with potential customers in early 2014 writing as follows: "Quick follow up. We have learned a lot over the last year. Please give me a call when you can." (SOMF at ¶8; Jameson Depo. Exh. No. 45; Jameson Depo. Exh. No. 55 ("Just a quick note to follow up. We have learned a lot since we started the safe brake light project.")) Internally, Mr. Jameson would make recommendations to the President of W&L on how to expand the client base. (SOMF at ¶9; Jameson Depo. Exh. No. 49 ("We need an internal champion for a corporate sweep.")) He would also report back to the President of W&L on the progress he was making with customers. (SOMF at ¶7; Jameson Exh. No. 59 ("Just wanted to recap the meeting. . . . We may be in all the stores next year."))



### 7.    *W&L Paid Defendant Jameson for Selling W&L's "SAFETY F1RST™" Brake Light Modules.*

W&L paid Mr. Jameson commissions for his sales efforts that were eventually successful, namely $2,522.43 in 2013, $8,572.19 in 2014, and $2,306.15 in 2015. (SOMF at ¶10; Answer to Interrogatory No. 3, page 9.) In early 2014, Mr. Jameson requested that W&L split his commission checks between himself and Randy Burchett, asking Mr. Dorsey as follows: "Would you ask Loren if we could make future commissions checks out 50/50 to James R. Burchett & myself. I know he had at one time Burchett's information. It is just a matter of simplifying our tax liabilities. Thank you." (SOMF at ¶11; Jameson Depo. Exh. No. 46; Jameson Tr. 111.)

//

//

### 8. *Defendant Jameson Admitted in His Marketing Video For Defendant Genesis That He Had "Represented" W&L.*

After launching Genesis, Mr. Jameson made a sales presentation to Kempton Chevrolet, a potential customer he was soliciting for purposes of selling the Genesis brake light circuit. A video was taken of that sales presentation. At this deposition, Mr. Jameson was shown a transcript of the video and asked about a portion the sales presentation where Mr. Jameson was explaining to Kempton Chevrolet why the Genesis brake light circuit was more reliable than the W&L brake light circuit: "We represented for a different company several years ago. One of the problems that we had was about seven or eight out of a hundred didn't work and we had to keep running back, exchanging them." (SOMF at ¶12; Jameson Depo. Exh. No. 76.) When asked who was the "different company" he had been representing as stated in his sales presentation for Genesis he professed no recollection of the sales presentation. After denying any memory of making this statement, he was then shown the actual portion of the video and admitted that the "different company" that he previously represented being referred to by him in the video was W&L. *Id*; Jameson Tr. 250 to 254.

### D. Defendant Jameson Falsely Stated Under Oath That He Never Held Himself Out as a Manufacturer's Representative for W&L.

In his answer to Plaintiff's Interrogatory No. 5, Mr. Jameson swore under oath that:

> Mr. Jameson ***never*** identified, represented, described himself as, or ***held himself out as, a manufacturer's representative***, agent, or other representative for Plaintiff because Mr. Jameson was never employed by Plaintiff, nor was he ever under contract as a representative of Plaintiff. [Emphasis Added]

(Attachment "J" to SOMF; Answer to Interrogatory No. 5, page 11.) The uncontroverted documentary evidence identified above overwhelmingly demonstrates that Mr. Jameson's sworn statement that he never identified himself or held himself out as a

14

1  manufacturer's representative for W&L was absolutely and unqualifiedly false and raises

2  the troublesome question of whether Mr. Jameson committed perjury by making this

3  statement.[8]

4  **E.    Under Arizona Law, Defendant Jameson Was An Agent of W&L and Owed**

5  **a Fiduciary Duty and Duty of Loyalty to W&L.**

6        The foregoing facts clearly demonstrate that Mr. Jameson was employed by W&L

7  for purposes of marketing and selling the W&L brake light circuit and servicing W&L's

8  customers. Arizona follows the Restatement of Agency, which provides that "authority

9  to do an act can be created by written or spoken words or other conduct of the principal

10  which, ***reasonably interpreted***, causes the agent to believe that the principal desires him

11  so to act on the principal's account." [Emphasis Added] *Restatement 2d of Agency*, §26

12  (2nd 2010). S*ee **Ruesga v. Kindred Nursing Ctrs. W., L.L.C.**,* 215 Ariz. 589, 597 n.5,

13  161 P.3d 1253, 1261 (Ct. App. 2007) ("Arizona courts generally follow the Restatement

14  of Agency, absent prior decisions to the contrary or other cogent reasons for departing

15  from it.") Nor is it "essential to the existence of authority that there be a contract between

16  the principal or agent or that the agent promise or otherwise undertake to act as agent."

17  Comment a to §26. Nor is the creation of an agency relationship under the law "depend

18  upon the intent of the parties to create it, nor their belief that they have done so."

19  Comment b to *Restatement 2d of Agency*, §1 (2nd 2010).

20

21

22  [8]   W&L does not make this accusation lightly; but the conclusion that this important denial of fact made at the start

23  of this case was willfully false is inescapable in view of the evidence identified herein. The Court should take
     note of the consequences that have flowed from Mr. Jameson taking this indefensible position from the inception

24  of the case. As a result, an inordinate amount of unnecessary time and expense has been incurred for purposes
     of establishing a pivotal fact that should have been conceded by Defendants when this litigation first commenced.

25  W&L respectfully submits this matter for the Court to handle as it deems appropriate using its inherent powers.
     *Accord*, ***Flippen v. Ashland Arms, LLC***, No. CV08-630-PHX-NVW, 2009 WL 1390839, at *3 (D. Ariz. May

26  15, 2009) ("The Court therefore finds that Flippen answered the interrogatory falsely in a willful and bad faith
     attempt to avoid this outcome, which would have been all but fatal to her case. … The complaint is dismissed

27  as sanction for discovery misconduct. The clerk shall enter judgment dismissing this action with prejudice and
     shall terminate the case.")

28                                                                15

The *Restatement 3d of Agency*, §1.01 (3rd 2006), cited with approval by the Arizona Court of Appeals in **Goodman v. Physical Res. Eng'g, Inc.**, 229 Ariz. 25, 29, 270 P.3d 852, 856 (Ct. App. 2011), reformulated this test as follows:

> Agency is the fiduciary relationship that arises when one-person (a "principal") manifests assent to another person (an "agent") that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents so to act.

*Accord*, **Ruesga v. Kindred Nursing Ctrs. W., L.L.C.**, 215 Ariz. 589, 161 P.3d 1253 (Ct. App. 2007) (same). Further, "[a] person manifests assent or intention through written or spoken words or other conduct." *Restatement 3d of Agency*, §1.03 (3rd 2006).

The intent of the principal is particularly important in establishing an agency relationship. *See* **State v. Tubbs**, 173 Ariz. 127, 128, 840 P.2d 303, 304 (Ct. App. 1992) ("Whether an agency relationship exists is a question of the intent of the principal.") Nor is it necessary for there to be an express contract in order to establish an agency relationship. *See* **Cote v. A. J. Bayless Mkts.**, 128 Ariz. 438, 444, 626 P.2d 602, 608 (Ct. App. 1981) ("No express contract between principal and agent is required to establish an agency relationship.") Further, the name or title the parties place on the relationship is not controlling. *See* **Indep. Gin Co. v. Parker**, 19 Ariz. App. 413, 415, 508 P.2d 78, 80 (1973) ("Agency is a question of the intention of the parties, as evidenced by their acts, and is not dependent upon what the particular person in question is called."). *See* **Ariz. State Tax Comm'n v. Parsons-Jurden Corp.**, 449 P.2d 626, 628 (Ariz. Ct. App. 1969) ("Agency is ultimately a question of the intention of the parties, as evidenced by their acts, and is not dependent upon what the particular person in question is called.").[9]

---

[9]   Nor would it matter if the parties had called Mr. Jameson an "independent contractor". *See* **Ochoa v. J.B. Martin & Sons Farms**, 287 F.3d 1182, 1189 (9th Cir. 2002) ("Under Arizona law, the categories "independent contractor" and "agent" are not mutually exclusive. An independent contractor who is not an employee of a principal can nevertheless still be that principal's agent."); **Lowe's HIW, Inc. v. Thomas James Civil Design Grp.**, No. CV 09-02481-PHX-MHM, 2010 U.S. Dist. LEXIS 68006, at *13 (D. Ariz. July 7, 2010) ("An

16

Moreover, "[t]he question of whether an agency relationship exists is a question of law for the court when the material facts from which it is to be inferred are not in dispute." ***Ruesga v. Kindred Nursing Ctrs. W., L.L.C.***, 215 Ariz. 589, 595, 161 P.3d 1253, 1259 (Ct. App. 2007); ***Cote v. A. J. Bayless Mkts.***, 128 Ariz. 438, 444, 626 P.2d 602, 608 (Ct. App. 1981) ("The question of whether an agency relationship exists is a question of law for the court when the material facts from which it is to be inferred are not in dispute."); ***Goodman v. Physical Res. Eng'g, Inc.***, 229 Ariz. 25, 30, 270 P.3d 852, 857 (Ct. App. 2011) ("[T]he issue of agency may be decided as a matter of law where no competent evidence legally sufficient to prove it has been introduced and the material facts from which it is to be inferred are undisputed and only one conclusion can be reasonably drawn therefrom." *citing* ***Schenks v. Earnhardt Ford Sales Co.***, 454 P.2d 873 (Ariz. Ct. App. 1969.)).

The Arizona courts have granted summary judgment on the issue of whether an agency relationship existed when the facts are undisputed:

> Whether or not an agency relation exists is a question of law for the court where the material facts from which it is to be inferred are not in dispute. ***Marquess v. Spaner***, 15 Ariz.App. 342, 488 P.2d 698 (1971); *3 C.J.S. Agency* § 547. If, on motion for summary judgment the record before the court shows there is no genuine dispute as to any material fact and that only one inference can be drawn from those undisputed material facts, and based on the undisputed material facts, the movant is entitled to judgment as a matter of law, summary judgment is appropriate. ***Dutch Inns of America, Inc. v. Horizon Corporation***, 18 Ariz.App. 116, 500 P.2d 901 (1972).

> The record clearly reflects that the relationship between Padilla and Mangels was that of principal-agent. Therefore, as to Padilla, a fiduciary relationship existed and Mangels owed to her a duty of utmost good faith and loyalty. ***Baker v. Leight***, 91 Ariz. 112, 370 P.2d 268 (1962). ***Vivian***

---

independent contractor who is not a formal employee of a principal can nevertheless still be that principal's agent.")

17

*Arnold Realty Co. v. McCormick*, 19 Ariz.App. 289, 506 P.2d 1074 (1973).

*Warren v. Mangels Realty*, 23 Ariz. App. 318, 321, 533 P.2d 78, 81 (1975)

The documentary evidence clearly establishes that W&L considered Mr. Jameson to be its agent for purposes of marketing the SAFETY F1RST™ brake light circuit and Mr. Jameson acted as an agent for W&L purposes of marketing the SAFETY F1RST™ brake light circuit. W&L and Mr. Jameson by their conduct plainly manifested the intent to create such an agency relationship. Based upon the course of conduct evidenced by the documents, it would defy all logic to conclude that a reasonable person in Mr. Jameson's position would not recognize that he was acting as agent for W&L. By engaging in an extensive course of conduct in marketing the SAFETY F1RST™ brake light circuit, sending countless e-mails identifying himself as W&L's "Manufacturer's Representative," representing as part of his loan application that he "represented" W&L as a "Manufacturer's Representative," telling potential customers of Genesis he was soliciting for business that he had previously "represented" W&L in the sale of a competing brake light circuit, meeting with customers of W&L, assisting them in the installation of the brake light circuit, providing training and marketing techniques, and ██████████████████████████████████ can lead to only one legal conclusion. Mr. Jameson was an agent for W&L purposes of marketing the SAFETY F1RST™ brake light circuit.

As an agent, it follows as a matter of law that Mr. Jameson owed a fiduciary duty and duty of loyalty to W&L. The seminal case of *Taser Int'l, Inc. v. Ward*,[10] makes this conclusion abundantly clear on remarkably similar facts. In *Taser*, the defendant, Ward, was an employee of the plaintiff, and while employed made arrangements to develop a

---

[10]   224 Ariz. 389, 231 P.3d 921, 159 Lab.Cas. P 60,999, 581 Ariz. Adv. Rep. 23, Ariz.App. Div. 1, May 13, 2010, (NO. 1 CA-CV 09-0468), review granted (Oct 26, 2010), review denied (Dec 09, 2010), order vacated (Dec 09, 2010).

competing product. *Id.*, 224 Ariz. at 391–92, 231 P.3d at 923–24. Once he resigned from his employment, he launched his competing business. *Id.* Taser brought suit, pleading many of the same causes of actions W&L has set forth in its Complaint, including a claim for breach of duty of loyalty and fiduciary duty. *Id.* The parties filed cross motions for summary judgment and the trial court granted the motion filed by Plaintiff Taser, ruling that: "[T]here was no genuine issue of material fact . . . that Defendant Ward owed a duty of loyalty to Taser and had a fiduciary duty to Taser, and that he breached and violated those duties." *Id.*, 224 Ariz. at 393, 231 P.3d at 925.

The Court of Appeals reversed the trial court, ruling that there were disputed issues of fact for trial as to whether Ward had actually used the confidential information to which he was exposed, and thus breached his duty of loyalty and fiduciary duty to his employer. *Id.*, 224 Ariz. at 398, 231 P.3d at 930. But in reversing the trial court's ruling on that narrow but decisive factual issue for purposes of summary judgment, the Court of Appeals made clear that in Arizona an agent does in fact owe a duty of loyalty and fiduciary duty to its principal, which duty can be breached if the facts show that the agent's conduct was more than mere preparations or constituted unfair competition. In discussing an agent's duty, the Court of Appeals held as follows:

> "[I]n Arizona, an employee/agent owes his or her employer/principal a fiduciary duty." ***McCallister Co. v. Kastella***, 170 Ariz. 455, 457, 825 P.2d 980, 982 (App. 1992). "[I]t is too plain to need discussion that an agent is under the duty to act with entire good faith and loyalty for the furtherance of the interests of his principal in all matters concerning or affecting the subject of his agency, and if he fails to do so[,] he is responsible to his principal for any loss resulting therefrom." ***Thomas v. Newcomb***, 26 Ariz. 47, 51, 221 P. 226, 228 (1923).

***Taser***, 224 Ariz. at 394, 231 P.3d at 926.

19

Further, with respect to the restrictions on the agent's ability to use confidential information of his principal, the Arizona Court of Appeals in *Taser* cited with approval the *Restatement 3d of Agency*, §8.05 as follows:

> Although an employee may, absent a non-compete covenant, compete with a former employer or prepare to compete with a current employer, "the tactics that an agent may use . . . are subject to legal limits." *Restatement (Third) of Agency* § 8.04 cmt. b. Specifically, "[a]n agent has a duty (1) not to use property of the principal for the agent's own purposes . . . ; and (2) not to use or communicate confidential information of the principal for the agent's own purposes or those of a third party."

*Restatement 3d of Agency* § 8.05.

***Taser***, 224 Ariz. at 396, 231 P.3d at 928; *See **E\*Trade Fin. Corp. v. Eaton***, No. CV-17-02471-PHX-JJT, 2018 WL 1933313, at \*1 (D. Ariz. Apr. 24, 2018) ("An employee owes an employer a fiduciary duty.")

## V.    RELIEF REQUESTED

Mr. Jameson's alleged subjective belief that he was never employed as an agent for W&L is legally irrelevant in view of the incontrovertible documentary evidence establishing that he consistently held himself out to the public and potential customers as a "Manufacturer's Representative" for W&L. The evidence established that W&L manifested the understanding that Mr. Jameson was its agent and Mr. Jameson clearly assented to that role and performed the functions delegated to him by Mr. Dorsey on behalf of W&L. Mr. Jameson's perjurious denial that he never worked for W&L is of no legal relevancy to the agency issue. There is only one reasonable conclusion to be drawn from the undisputed facts – Mr. Jameson acted as an agent for W&L for purposes of marketing the SAFETY F1RST™ brake light module for the benefit of W&L. The legal conclusion regarding Mr. Jameson's duty of loyalty and fiduciary duty which flows from his status as an agent is settled.

1  W&L respectfully requests entry of partial summary judgment on Count IV of the

2  Complaint ruling that Mr. Jameson was employed by W&L as an agent for purposes of

3  marketing the W&L brake light circuit, and therefore, as W&L's agent Mr. Jameson owed

4  a duty to W&L not to use W&L's trade secrets and confidential information for his own

5  competitive advantage and to the detriment of W&L.

6  Dated this 8th day of June 2018.

7

8  By: /s/ Justin D. Castillo_____
   Justin D. Castillo (AZ Bar. No. 024086)
9  Brei Law Firm
   4574 N. First Ave., Ste. 150
10 Tucson, AZ 95718
   (520) 297-4411
11 justin@breilaw.com
12 Counsel for Williams & Lake, LLC

13 By: /s/ Bradshaw Rost
14 Bradshaw Rost (admitted pro hac vice)
   Tenenbaum & Saas, P.C.
15 4504 Walsh Street, Suite 200
   Chevy Chase, Maryland 20814
16 BRost@tspclaw.com
17 Counsel for Williams & Lake, LLC

18 By: /s/ John Roberts
19 John Roberts (admitted pro hac vice)
   Roberts IP LAW
20 624 3rd Street
   Columbus, IN 47201
21 812-418-3663
22 john@robertsiplaw.com
23 Counsel for Williams & Lake, LLC

24

25

26

27

28  21

**CERTIFICATE OF SERVICE**

☒        I hereby certify that on June 8, 2018, I electronically transmitted the attached documents to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Barry G. Stratford
BStratford@perkinscoie.com

Christopher S. Coleman
CColeman@perkinscoie.com

Stephen A. Brookman
SBrookman@perkinscoie.com

*/s/   Sandra Tokin*_____

22